UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

ASSOCIATED INDUSTRIES OF KENTUCKY, INCORPORATED            PLAINTIFF

v.                                                        CIVIL ACTION NO. 3:05CV-270-S

UNITED STATES LIABILITY INSURANCE GROUP                   DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the court on cross-motions of the parties for partial summary judgment (DNs 12, 21). These motions address the question of the duty of the defendant, United States Liability Insurance Group ("USLIG"), to provide a defense on behalf of the plaintiff, Associated Industries of Kentucky, Incorporated ("AIK"), in four currently pending lawsuits. For the reasons set forth herein, the court concludes that there is no duty to provide a defense for AIK, and USLIG is entitled to summary judgment on this issue.

A party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-60, 90 S. Ct. 1598, 16 L. Ed. 2d 142 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir. 1976). Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. *Id.* at 2510. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First National Bank of*

*Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968). The evidence must be construed in a light most favorable to the party opposing the motion. *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962). The following facts are taken from the Amended Complaint and the briefs of the parties. The pertinent facts are undisputed.

AIK is a nonprofit Kentucky corporation which operates as a manufacturing association for member companies. AIK provides services to its members, which include, but are not limited to, lobbying services, membership publications, membership discounts, labor relations and counseling. AIK also sponsors AIK Comp, a group self-insurance fund composed of employers who have chosen to pool their liability for workers compensation benefits on a self-insured basis, as permitted by Kentucky law. In order to participate in AIK Comp, employers must be members of AIK and become bound to pay the pooled liabilities of the group. AIK members are offered membership in AIK Comp, but need not participate. Employers participating in AIK Comp pay a sponsor fee for the benefit of participating in the program and pay premiums.

In December, 1998, AIK purchased a Nonprofit Professional Liability Policy from USLIG. The policy provides coverage for AIK and its directors and officers. The policy states that "[t]he Company has the right and duty to defend any Claim to which this insurance applies, even if the allegations of the Claim are groundless, false, or fraudulent." Coverage Part A, ¶ 1B. AIK seeks a declaration from this court that USLIG has a duty under this provision to provide a defense to AIK in four pending lawsuits.

AIK and various current and former directors have been sued in the Gallatin, Boone, and Franklin Circuit courts alleging, essentially, fraud and mismanagement in the operation of AIK Comp.[1] USLIG received notice of the actions but declined to provide a defense asserting that there

---

[1] *Gallatin Health care, Inc. v. Associated Industries of Kentucky, Inc.*, Gallatin Circuit Court No. 04-CI-00184; *Modco Transport v. Associated Industries of Kentucky, Inc.*, Boone Circuit Court No. 04-CI-1833; *Appalachian Regional Healthcare, Inc. v. Turner*, Franklin Circuit Court No. 05-CI-00344; *Jennings v. Associated Industries of Kentucky, Inc.*, Franklin Circuit Court No.
(continued...)

is no coverage for these claims under the policy. In their various responses to AIK's requests for defense and indemnification, USLIG raised a number of grounds for its denials. The principal ground, the one that we find to be dispositive here, is the application of the Insurance Program Exclusion Endorsement ("Insurance Exclusion") which states:

> In consideration of the premium paid, it is agreed that the Company shall not be liable to make any payment for Loss or Defense Costs in connection with any Claim made against any Insured based upon, arising out of, directly or indirectly resulting from, in consequence of, the offering or administration of any insurance plan or program.

USLIG explained that

> In its Complaint G[allatin] H[ealth] C[are] alleges essentially that AIK utilized AIK Comp as a marketing tool to induce companies such as GHC to join AIK. GHC alleges that in managing AIK Comp, AIK continually reduced premiums charged to AIK members for AIK Comp insurance to artificially low rates as a means of securing membership, which resulted in AIK Comp having an inadequate premium base to cover the losses of AIK Comp policyholders. GHC also alleges that AIK failed to secure adequate reinsurance on behalf of AIK Comp and failed to maintain adequate loss reserves. It is alleged that due to AIK's mismanagement of AIK Comp, AIK Comp policyholders were forced to pay significant assessments to restore AIK Comp to solvency.
>
> Allegations in each of the first three causes of action relate to AIK's alleged failure to maintain sufficient reserves and a sufficient premium structure (Count One), failure to operate AIK Comp for the benefit of its members (Count Two), failure to procure appropriate reinsurance (Count Three), thus exposing AIK Comp policyholders to significant assessments. In the fourth and fifth causes of action it is alleged that AIK utilized misleading financial statements about AIK Comp in order to induce companies to join AIK and to purchase AIK Comp insurance in violation of Kentucky Statutes (Count Four) as a result of which AIK became unjustly enriched by receiving membership dues and sponsor fees from the premiums paid to AIK Comp (Count Five).
>
> Bearing the foregoing in mind, please refer to the Insurance Program Exclusion Endorsement...

USLIG December 2, 2004 Denial Letter, pp. 1-2.[2]

---

[1](...continued)
05-CI-00658.

[2] While the claims in each complaint differ somewhat, the basic premise of the complaints is that AIK Comp was rendered
(continued...)

- 3 -

An insurer has a duty to defend "if there is any allegation which potentially, possibly or might come within the coverage of the policy." *James Graham Brown Foundation, Inc. v. St. Paul Fire & Marine Insurance Co.*, 814 S.W.2d 273, 279 (Ky. 1991); *Lenning v. Commercial Union Insurance Co.*, 260 F.3d 574 (6th Cir. 2001), *quoting, Brown Foundation, supra.* As noted in *Brown Foundation,* 814 S.W.2d at 279-80:

> The proper standard for the analysis of insurance contracts in Kentucky is a subjective one. *Fryman v. Pilot Life Insurance Company*, Ky., 704 S.W.2d 205 (1986) holds that terms of insurance contracts have no technical meaning in law and are to be interpreted according to the usage of the average man and as they would be read and understood by him in light of the prevailing rule that uncertainties and ambiguities must be resolved in favor of the insured...*Fryman, supra*, requires that insurance contracts be construed according to the usage of the average person without injecting any other analysis or standard...[w]here not ambiguous, the ordinary meaning of the words chosen by the insurer is to be followed. *Washington National Insurance Company v. Burke*, Ky., 258 S.W.2d 709 (1953)...

With respect to the duty to defend, "[t]he insurance company must defend any suit in which the language of the complaint would bring it within the policy coverage regardless of the merit of the action." *Brown Foundation*, 814 S.W.2d at 279. The duty to defend is separate and distinct from the obligation to pay any claim, and the duty to defend is broader than the duty to indemnify. *Brown Foundation*, 814 S.W.2d at 279-80, *citing, Wolford v. Wolford*, 662 S.W.2d 835 (Ky. 1984). "The determination of whether a defense is required must be made at the outset of the litigation. *Knapp v. Chevron USA, Inc.*, 781 F.2d 1123 (5th Cir. 1986). The duty to defend continues to the point of establishing that liability upon which plaintiff was relying was in fact not covered by the policy and not merely that it might not be. 7C Appelman, *Insurance Law and Practice* § 4683.01 at 69 (Berdal Ed. 1979)." *Brown Foundation,* 814 S.W.2d at 279.

---

²(...continued)
undersecured as a result of the actions of AIK and its officers and directors. It is the relationship between AIK and AIK Comp which is pertinent to this inquiry rather than the specifics of the individual causes of action. The *Gallatin Health Care* claims are representative. Thus we need not recite the allegations in each suit in order to resolve the matter before us.

The parties agree that under Kentucky law, USLIG is obligated to defend AIK unless the complaint unambiguously excludes coverage.  AIK contends that (1) the language of the Insurance Exclusion does not apply or is otherwise ambiguous, (2) AIK does not "offer" or "administer" insurance, and (3) AIK Comp is not an insurance program.

AIK contends, as an initial matter, that the Insurance Exclusion is inapplicable.  It contends that the exclusion relates only to employee benefit plans or employee welfare plans under the Employee Retirement Income Security Act ("ERISA").  February, 2005 Letter to USLIG.  AIK urges that the use of the term "administration of" in the Insurance Exclusion refers to the ERISA "Plan" described in the Fiduciary Liability Endorsement. In reaching this conclusion, AIK grafts the definition of "Administration" from the Fiduciary Liability Coverage Endorsement onto the Insurance Exclusion.   In fact, these endorsements do not contain the same terms.

"Administration" is defined as

> interpreting or counseling on benefits concerning any Plan, handling records in connection with any Plan, or activities affecting enrollment, termination, or cancellation of employees under any Plan.  Administration, however, does not include compliance with any duty under ERISA to notify or educate Plan participants as a group concerning any Plan.

Fiduciary Liability Coverage Endorsement, ¶ 3.R.  "Plan" is defined in the Fiduciary Liability Endorsement as "any employee benefit plan(s) or employee welfare plan(s) subject to ERISA, which is sponsored, maintained, operated or administered by the Organization." *Id.*

The definition of "Administration" in the Fiduciary Liability Endorsement refers to any "Plan."   In this provision both terms are capitalized and then particularly defined.  *See,* DEFINITIONS; Definition M, "Wrongful Act."  These terms are thus used as terms of art defined in the context of fiduciary liability coverage.  By contrast, the Insurance Exclusion uses the terms "administration" and "plan" in common parlance in the phrase "in connection with any Claim made against any Insured based upon, arising out of, directly or indirectly resulting from, in consequence of, the offering of or administration of any insurance plan or program."  There is no peculiar

- 5 -

definition for these terms contained in the Insurance Exclusion. We find, therefore, that AIK's attempt to alter the definitions of the common terms to limit them to an ERISA context must fail. *St. Paul Fire & Marine Ins. Co. v. Powell-Walton-Milward, Inc.*, 870 S.W.2d 223 (Ky. 1994)(exclusions are to be narrowly interpreted, but nonexistent ambiguity should not be utilized to resolve a policy against the company). Further, the Insurance Exclusion is not ambiguous. The terms "offering of" or "administration of" are not defined, as those terms have clear, ordinary meanings in the context of this provision.

AIK contends that the Insurance Exclusion does not apply because AIK does not "offer" or "administer" insurance. AIK urges that it, the Association, could not "offer" or "administer" insurance because it is a legally distinct entity from AIK Comp, the self-insured fund.[3] Whether AIK in fact offers or administers insurance is beside the point in this analysis, however. The court is required to determine whether the claims *alleged against* AIK are "based upon, arising out of, directly or indirectly resulting from, in consequence of, the offering of or administration of any insurance plan or program." The four complaints clearly allege claims arising out of the offering or administration of the self-insured fund.[4] For example, AIK is alleged to have participated in reducing the premiums for AIK Comp's workers compensation insurance. *Gallatin Health Care* complaint. AIK is alleged to have used AIK Comp as a marketing tool to solicit, recruit and retain members. *Gallatin Health Care* complaint. AIK is alleged to have maliciously, knowingly and intentionally determined to exploit the unlawful dividends, reductions in future premiums, and lack of excess insurance of AIK Comp. *Modco Transport*, complaint. It is alleged that the Trustees were selected, screened and appointed by AIK. *Appalachian Regional Healthcare* complaint. It is alleged that AIK disseminated materially false and misleading statements to the public when they

---

[3] The forerunner to AIK Comp, formed in 1979, was Associated Industries of Kentucky Selective Self-Insurance Fund ("AIK-SIF").

[4] Whether the self-insured fund is "insurance" under the policy term is the next inquiry.

- 6 -

knew or should have known that such statements would mislead the plaintiffs, group members and applicants in maintaining or retaining workers' compensation insurance through the Fund because of continuing assurances of adequate fund protection. *Appalachian Regional Healthcare* complaint. AIK is alleged to have controlled, sponsored or approved the governance and management of AIK Comp and thus is responsible for the mismanagement of AIK Comp. *Jennings* complaint. While AIK categorically denies that it engaged in such conduct, it is clear that the claims are based upon or arise out of the offering or administration of AIK Comp. The Insurance Exclusion therefore clearly and unambiguously excludes coverage for defense costs if the court further determines that the fund is "insurance," under the terms of the policy.

AIK contends that AIK Comp self-insured workers compensation program is not an insurance program. AIK begins its argument with the statement that the term "self-insurance" is deceiving. It then ventures into a discussion of the "relative structure" and "functions" of AIK Comp, citing a number of state court decisions from other jurisdictions in concluding that the fund is not an insurance program. AIK places particular emphasis on the cases of *American Nurses Association v. Passaic General Hospital*, 471 A.2d 66 (N.J. App. 1984) and *Iowa Contractors Workers' Compensation Group v. Iowa Insurance Guaranty Association*, 437 N.W.2d 909 (Iowa 1989).[5] These cases need not be distinguished as the court is not concerned here with the way in which Iowa and New Jersey courts view self-insured funds. Rather, it is the task of this court to determine whether the term "insurance" in the Insurance Exclusion, according to the usage of the average person, so clearly includes AIK Comp that coverage is unambiguously excluded by the provision for the claims against AIK. *See, Brown Foundation,* 814 S.W.2d at 279 ("terms of

---

[5]The Kentucky cases cited in support of AIK's position are not instructive. They involved single entities who self-insured under the motor vehicle insurance statutes. *See, Reeves v. Wright & Taylor*, 220 S.W.2d 1007 (Ky. 1949); *Davidson v. American Freightways, Inc.*, 25 S.W.3d 94 (Ky. 2000); *Hoffman v. Yellow Cab Company of Louisville*, 57 S.W.3d 257 (Ky. 2001).

insurance contracts have no technical meaning in law and are to be interpreted according to the usage of the average man and as they would be read and understood by him").

Initially, we note that AIK Comp is self-described as "self-insured workers' compensation insurance" and promoted as "Kentucky's leading workers' compensation insurance provider, specializing in loss prevention and risk management." In order to avoid calling a duck a duck, however, AIK urges that a purported lack of risk transference and differing regulatory treatment between insurance companies and self-insured funds evidence that AIK Comp is not insurance. This court disagrees.

Kentucky law defines "insurance" as "a contract whereby one undertakes to pay or indemnify another as to loss from certain specified contingencies or perils called "risks," or to pay or grant a specified amount or determinable benefit or annuity in connection with ascertainable risk contingencies, or to act as a surety." KRS 304.1-030. This definition is in harmony with common dictionary definitions of the term. *Webster's Desk Dictionary* (2001)("coverage by contract in which one party agrees to indemnify another for a specified loss"). In joining AIK Comp, an employer must become a member of AIK, must pay a sponsor fee, and must pay premiums. In addition, the employer must sign an agreement, in accordance with Kentucky regulations, to be bound, jointly and severally, to pay the pooled liabilities of the fund. 803 KAR 25:026. This clearly involves a contractual undertaking to indemnify specified losses or "risks" of the *all* members. The term "insurance" as used in the Insurance Exclusion does not distinguish self-insured plans nor does it speak to the manner in which risk is managed. The scope of the clause is not limited to any single form of insurance. The fact that AIK Comp was not required to apply for and receive a certificate authority from the Kentucky Department of Insurance in order to operate and was not taxed as an insurance company does not alter our view of AIK Comp. The risks pooled in the fund are losses due to worker injuries. In its wisdom, the legislature placed oversight for this insurance in the hands of the Kentucky Labor Cabinet. In light of the need for more stringent oversight and accountability,

the responsibility has since been reassigned to the Department of Insurance. *See*, Senate Bill No. 86, Feb. 22, 2005.

We conclude that the Insurance Exclusion clearly and unambiguously excludes coverage for the claims made against AIK. Because of this conclusion, the doctrine of reasonable expectations is unavailing to AIK to enlarge its rights under the policy. *Brown Foundation*, 814 S.W.2d at 280. The terms of the exclusion, under their plain and ordinary meaning, encompass the allegations of the four complaints and therefore absolve USLIG from any obligation to provide a defense in these matters.

For the reasons set forth herein and the court being otherwise sufficiently advised, **IT IS HEREBY ORDERED AND ADJUDGED** that

> 1. The motion of the defendant, United States Liability Insurance Group, for partial summary judgment (DN 21) is **GRANTED**.
>
> 2. The motion of the plaintiff, Associated Industries of Kentucky, Incorporated, for partial summary judgment (DN 12) is **DENIED**.

**IT IS SO ORDERED.**