UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

ASSOCIATED INDUSTRIES OF KENTUCKY, INCORPORATED        PLAINTIFF

v.                                                CIVIL ACTION NO. 3:05CV-270-S

UNITED STATES LIABILITY INSURANCE GROUP                DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the court on motion of the plaintiff, Associated Industries of Kentucky, Incorporated ("AIK"), to alter or amend the September 22, 2006 Memorandum Opinion and Order of this court granting partial summary judgment in favor of the defendant, United States Liability Insurance Group ("USLIG")(DN 42). In that opinion (DN 41), the court concluded that there was no duty on the part of USLIG to provide a defense for AIK in four then pending, and now consolidated, lawsuits.[1]

AIK has moved for amendment under Fed.R.Civ.P. 59(e) on the grounds that the award of partial summary judgment was clearly erroneous, manifestly unjust, and based upon allegations which have been abandoned or amended.

This is an action seeking a declaration that USLIG has a duty to defend and to provide coverage under a Nonprofit Professional Liability Policy purchased by AIK. The action was filed in May of 2005 and was on the docket of Judge John G. Heyburn II until May of 2006. In January 2006, AIK moved for partial summary judgment on its claim that USLIG had a duty to provide a defense in four state court actions. USLIG filed its own motion for partial summary judgment

---

[1] A Consolidated Amended Class Action Complaint was filed in Franklin Circuit Court on July 3, 2006, replacing three of the previous complaints filed in the Gallatin, Boone, and Franklin circuit courts. Apparently, *R. Glenn Jennings v. Associated Industries of Kentucky, Inc.*, No. 05-CI-00658 remains pending. With respect to the duty to provide a defense in that action, the September 22, 2006 Memorandum Opinion and Order remains in force and effect.

urging that it had no such duty. The matter was fully briefed by April 2006. Judge Heyburn set the matter for oral argument on May 4, 2006. On April 19, 2006, Judge Heyburn recused, and the case was reassigned to the docket of this judge. Oral argument before Judge Heyburn was remanded.

On June 15, 2006, AIK filed a motion for referral to the magistrate judge for settlement conference and for oral argument on the pending motions. In that motion, AIK stated only that "[i]n support of said Motion [for oral argument], the Plaintiff states that the Motions are fully briefed and oral arguments were previously set and cancelled, yet argument is still needed." (DN 35/36). No mention was made of the need for revision of summary judgment briefs nor was there any suggestion that the landscape of the case had changed since the time the summary judgment motions were filed. USLIG did not agree to participate in a settlement conference, but did agree to oral argument. Its response was similarly unhelpful, however, as it did not suggest any reason that the court should conduct oral argument. In fact, there was no request for oral argument made in the original motions before Judge Heyburn. Rather, it appears that at the initial scheduling conference on October 3, 2005, Judge Heyburn scheduled an evidentiary hearing on the issue of coverage (DN 8). The plaintiff sought to modify the scope of that proceeding so as to address only the issue of USLIG's obligation to defend. This court did not conduct oral argument. The court ruled only with respect to the issue of USLIG's obligation to provide a defense.

As the parties are undoubtedly aware, it is the rare case that the undersigned judge conducts oral argument on summary judgment motions. It has been this court's practice for the past twenty years to hear argument in only the exceptional case in which the briefs require clarification. More than a *pro forma* request to be heard is required for this court to schedule argument. The court reviewed the comprehensive, well-written briefs addressing the duty to defend and found no need for argument. The issue presented is neither novel nor complicated. On that basis, the court issued its decision on the written submissions. Unfortunately, no amendments to the briefs were filed from July 3, 2006 when the state court complaints were amended until the court ruled on the motions in

September, 2006.  No amendments to the pleadings or the briefs were filed despite the fact that a new demand for coverage and a defense were made, and a new denial was received by AIK in August, thus altering the underlying premise of the action.  The court has not been provided a copy of the August 2006 denial letter.

AIK stated in its motion to amend the judgment that "AIK believed that the previously scheduled hearing would simply be reset for another date and, therefore, believed that it would have the time and opportunity to bring the newly amended class action complaint to the Court's attention..." (DN 42).  This erroneous assumption has resulted in the issuance of this second memorandum opinion and order.  Again, the court finds that oral argument is unnecessary.  The issue is straightforward.  It has been presented clearly and articulately in briefs filed by competent counsel.  Little that is new has been raised in this second round of memoranda.

The complaint undergirding the claim for provision of a defense has been amended.  However, much of our previous opinion remains sound and will be restated in pertinent part herein.

A party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-60, 90 S. Ct. 1598, 16 L. Ed. 2d 142 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir. 1976).  Not every factual dispute between the parties will prevent summary judgment.  The disputed facts must be material.  They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986).  The dispute must also be genuine.  The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party.  *Id.* at 2510.  The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial.  *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968).  The evidence must be construed in a

light most favorable to the party opposing the motion. *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962). The following facts are taken from the Consolidated Amended Class Action Complaint and the briefs of the parties. The pertinent facts are undisputed.

AIK is a nonprofit Kentucky corporation which operates as a manufacturing association for member companies. AIK provides services to its members, which include, but are not limited to, lobbying services, membership publications, membership discounts, labor relations and counseling. AIK also sponsors AIK Comp, a group self-insurance fund composed of employers who have chosen to pool their liability for workers compensation benefits on a self-insured basis, as permitted by Kentucky law. In order to participate in AIK Comp, employers must be members of AIK and become bound to pay the pooled liabilities of the group. AIK members are offered membership in AIK Comp, but need not participate. Employers participating in AIK Comp pay a sponsor fee for the benefit of participating in the program and pay premiums.

In December, 1998, AIK purchased a Nonprofit Professional Liability Policy from USLIG. The policy provides coverage for AIK and its directors and officers. The policy states that "[t]he Company has the right and duty to defend any Claim to which this insurance applies, even if the allegations of the Claim are groundless, false, or fraudulent." Coverage Part A, ¶ 1B. AIK seeks a declaration from this court that USLIG has a duty under this provision to provide a defense to AIK in the pending suit.

AIK and various current and former directors were originally sued in the Gallatin, Boone, and Franklin Circuit courts. The complaints alleged, essentially, fraud and mismanagement in the operation of AIK Comp.[2] USLIG received notice of the actions but declined to provide a defense asserting that there was no coverage for these claims under the policy. In their various responses

---

[2]*Gallatin Health care, Inc. v. Associated Industries of Kentucky, Inc.*, Gallatin Circuit Court No. 04-CI-00184; *Modco Transport v. Associated Industries of Kentucky, Inc.*, Boone Circuit Court No. 04-CI-1833; *Appalachian Regional Healthcare, Inc. v. Turner*, Franklin Circuit Court No. 05-CI-00344; *Jennings v. Associated Industries of Kentucky, Inc.*, Franklin Circuit Court No. 05-CI-00658.

- 4 -

to AIK's requests for defense and indemnification, USLIG raised a number of grounds for its denials. The principal ground was the application of the Insurance Program Exclusion Endorsement ("Insurance Exclusion") which states:

> In consideration of the premium paid, it is agreed that the Company shall not be liable to make any payment for Loss or Defense Costs in connection with any Claim made against any Insured based upon, arising out of, directly or indirectly resulting from, in consequence of, the offering or administration of any insurance plan or program.

USLIG explained that

> In its Complaint G[allatin] H[ealth] C[are] alleges essentially that AIK utilized AIK Comp as a marketing tool to induce companies such as GHC to join AIK. GHC alleges that in managing AIK Comp, AIK continually reduced premiums charged to AIK members for AIK Comp insurance to artificially low rates as a means of securing membership, which resulted in AIK Comp having an inadequate premium base to cover the losses of AIK Comp policyholders. GHC also alleges that AIK failed to secure adequate reinsurance on behalf of AIK Comp and failed to maintain adequate loss reserves. It is alleged that due to AIK's mismanagement of AIK Comp, AIK Comp policyholders were forced to pay significant assessments to restore AIK Comp to solvency.
>
> Allegations in each of the first three causes of action relate to AIK's alleged failure to maintain sufficient reserves and a sufficient premium structure (Count One), failure to operate AIK Comp for the benefit of its members (Count Two), failure to procure appropriate reinsurance (Count Three), thus exposing AIK Comp policyholders to significant assessments. In the fourth and fifth causes of action it is alleged that AIK utilized misleading financial statements about AIK Comp in order to induce companies to join AIK and to purchase AIK Comp insurance in violation of Kentucky Statutes (Count Four) as a result of which AIK became unjustly enriched by receiving membership dues and sponsor fees from the premiums paid to AIK Comp (Count Five).
>
> Bearing the foregoing in mind, please refer to the Insurance Program Exclusion Endorsement...

USLIG December 2, 2004 Denial Letter, pp. 1-2.

A Consolidated Amended Class Action Complaint was filed in the Franklin Circuit Court on July 3, 2006. The claims against AIK and its officers are much changed in the revised suit. There are now only three claims, Counts VIII, XIV and XV, which are directed at AIK.

Among the numerous factual allegations,[3] the complaint alleges that (1) AIK was the sponsor of AIK Comp as required by Kentucky law to enable AIK Comp to provide workers compensation coverage to the members of AIK Comp (¶ 47); (2) AIK played a role in the selection of the Trustees of AIK Comp by providing a list of nominees from which the vacancies were filled, thus AIK was responsible for the appointment of the Trustees who governed and mismanaged AIK Comp (¶ 48); (3) AIK agreed to indemnify the Trustees of AIK Comp for liability arising from their activities as Trustees of AIK Comp (¶ 48); (4) AIK had actual notice of management problems with AIK Comp by virtue of the 1997 Agreed Order with the Kentucky Department of Workers' Claims (¶¶ 80-85); (5) In September, 2002 AIK was provided evidence raising serious questions concerning the adequacy of the claim loss reserves and the deficiencies in fund management by WCASC (¶¶ 106-113).

> Count VIII alleges that
>
> Beginning in 1998, AIK agreed to indemnify the Trustees of AIK Comp for any liability that such Trustees would incur through their role as Trustees of AIK Comp.
>
> The Named Plaintiffs and the Class were the intended beneficiaries of the obligation of AIK to indemnify the Trustees.
>
> The actions of the Trustees have caused damage to the Named Plaintiffs and the Class as more fully described above. To the extent that the Trustees are not able to satisfy their contractual obligations, the Named Plaintiffs and the Class are entitled to look to AIK to satisfy such liability based on such indemnity.

Count XIV alleges that

> As the sponsoring entity for AIK Comp, AIK had the duty to take necessary steps to insure that AIK Comp complied with the terms set forth in the Indemnity Agreement, including but not limited to the election of trustees by the members of AIK Comp and the procurement of reinsurance to maintain the financial integrity of the Fund.

---

[3]The preliminary allegations number 152 paragraphs.

- 7 -

> AIK breached its contractual obligations by failing to insure compliance with the terms of the Indemnity Agreement to the damage of the Named Plaintiffs and the Class.
>
> Count XV alleges that AIK through its senior management was aware in 2002 of the substantial problems related to the reserving practices of AIK Comp and the involvement of WCASC, ASC and the Officers of AIK Comp in the reserving practices.
>
> AIK had the duty to investigate the claims of reserving irregularities and report its findings to the members of AIK which were eligible to join AIK Comp as well as the members of AIK which were at the time members of AIK Comp.
>
> AIK failed to conduct an appropriate investigation of the reserving practices of AIK Comp and failed to report its findings to its members, including the Named Plaintiffs and the Class.
>
> AIK's failure to investigate and disclose the reserving irregularities of AIK Comp caused damages to the Named Plaintiffs and the Class in an amount to be s[h]own [sic] at trial.

Paragraph 55(e) recites as a common issue of law and fact raised by all of the plaintiffs:

> [w]hether AIK through its senior management knew or had reason to know of the events that led to the financial demise of AIK Comp and failed to notify the members of AIk who were also members of AIK Comp in a timely fashion so that the members of AIK Comp could make an informed decision as to whether to commence or maintain membership in AIK Comp.

The plaintiffs allege that as a result of the tortious acts and omissions of the defendants, they have become subject to liability for participation in the AIK Comp Fund for over $90,775,754 in losses attributable to over 3,700 group members of AIK Comp. (¶ 3). They state that as of May 31, 2006, the rehabilitator of AIK Comp has collected in excess of $3,300,000 from the named plaintiffs and in excess of $74,000,000 in the aggregate from the former group members of AIK Comp. (¶ 5).

The court previously rejected the argument of AIK that AIK Comp self-insured workers compensation program is not an insurance program. That portion of the September 22, 2006 opinion has not been challenged, and will be restated and reaffirmed herein.

AIK begins its argument with the statement that the term "self-insurance" is deceiving. It then ventures into a discussion of the "relative structure" and "functions" of AIK Comp, citing a number of state court decisions from other jurisdictions in concluding that the fund is not an insurance program. AIK places particular emphasis on the cases of *American Nurses Association v. Passaic General Hospital*, 471 A.2d 66 (N.J. App. 1984) and *Iowa Contractors Workers' Compensation Group v. Iowa Insurance Guaranty Association*, 437 N.W.2d 909 (Iowa 1989).[4] These cases need not be distinguished as the court is not concerned here with the way in which Iowa and New Jersey courts view self-insured funds. Rather, it is the task of this court to determine whether the term "insurance" in the Insurance Exclusion, according to the usage of the average person, so clearly includes AIK Comp that coverage is unambiguously excluded by the provision for the claims against AIK. *See, Brown Foundation,* 814 S.W.2d at 279 ("terms of insurance contracts have no technical meaning in law and are to be interpreted according to the usage of the average man and as they would be read and understood by him").

Initially, we note that AIK Comp is self-described as "self-insured workers' compensation insurance" and promoted as "Kentucky's leading workers' compensation insurance provider, specializing in loss prevention and risk management." In order to avoid calling a duck a duck, however, AIK urges that a purported lack of risk transference and differing regulatory treatment between insurance companies and self-insured funds evidence that AIK Comp is not insurance. This court disagrees.

Kentucky law defines "insurance" as "a contract whereby one undertakes to pay or indemnify another as to loss from certain specified contingencies or perils called "risks," or to pay or grant a specified amount or determinable benefit or annuity in connection with ascertainable risk

---

[4]The Kentucky cases cited in support of AIK's position are not instructive. They involved single entities who self-insured under the motor vehicle insurance statutes. *See, Reeves v. Wright & Taylor*, 220 S.W.2d 1007 (Ky. 1949); *Davidson v. American Freightways, Inc.*, 25 S.W.3d 94 (Ky. 2000); *Hoffman v. Yellow Cab Company of Louisville*, 57 S.W.3d 257 (Ky. 2001).

contingencies, or to act as a surety." KRS 304.1-030. This definition is in harmony with common dictionary definitions of the term. *Webster's Desk Dictionary* (2001)("coverage by contract in which one party agrees to indemnify another for a specified loss"). In joining AIK Comp, an employer must become a member of AIK, must pay a sponsor fee, and must pay premiums. In addition, the employer must sign an agreement, in accordance with Kentucky regulations, to be bound, jointly and severally, to pay the pooled liabilities of the fund. 803 KAR 25:026. This clearly involves a contractual undertaking to indemnify specified losses or "risks" of the *all* members. The term "insurance" as used in the Insurance Exclusion does not distinguish self-insured plans nor does it speak to the manner in which risk is managed. The scope of the clause is not limited to any single form of insurance. The fact that AIK Comp was not required to apply for and receive a certificate authority from the Kentucky Department of Insurance in order to operate and was not taxed as an insurance company does not alter our view of AIK Comp. The risks pooled in the fund are losses due to worker injuries. In its wisdom, the legislature placed oversight for this insurance in the hands of the Kentucky Labor Cabinet. In light of the need for more stringent oversight and accountability, the responsibility has since been reassigned to the Department of Insurance. *See*, Senate Bill No. 86, Feb. 22, 2005.

The discrete question presently before the court is whether there is any allegation in the amended complaint which potentially, possibly, or might come within the coverage of the policy." *James Graham Brown Foundation, Inc. v. St. Paul Fire & Marine Insurance Co.*, 814 S.W.2d 273 (Ky. 1991). AIK is entitled to all coverage that may be reasonably expected according to the terms of the policy. *Kentucky Association of Counties All Lines Trust Fund v. McClendon*, 157 S.W.3d 626, 634 (Ky. 2005)(*quoting, Hendrix v. Fireman's Fund Insurance Co.*, 823 S.W.2d 937, 938 (Ky.App. 1991)). Only an unequivocally conspicuous, plain and clear manifestation in the policy of USLIG's intent to exclude coverage for the claims alleged in the Consolidated Amended Class

Action Complaint will relieve USLIG of the obligation to provide a defense for AIK. *Id.* (*quoting, Simon v. Continental Insurance Co.*, 724 S.W.2d 210, 212 (Ky. 1986)).

An insurer has a duty to defend "if there is any allegation which potentially, possibly or might come within the coverage of the policy." *James Graham Brown Foundation, Inc. v. St. Paul Fire & Marine Insurance Co.*, 814 S.W.2d 273, 279 (Ky. 1991); *Lenning v. Commercial Union Insurance Co.*, 260 F.3d 574 (6th Cir. 2001), *quoting, Brown Foundation, supra.* As noted in *Brown Foundation,* 814 S.W.2d at 279-80:

> The proper standard for the analysis of insurance contracts in Kentucky is a subjective one. *Fryman v. Pilot Life Insurance Company*, Ky., 704 S.W.2d 205 (1986) holds that terms of insurance contracts have no technical meaning in law and are to be interpreted according to the usage of the average man and as they would be read and understood by him in light of the prevailing rule that uncertainties and ambiguities must be resolved in favor of the insured...*Fryman, supra*, requires that insurance contracts be construed according to the usage of the average person without injecting any other analysis or standard...[w]here not ambiguous, the ordinary meaning of the words chosen by the insurer is to be followed. *Washington National Insurance Company v. Burke*, Ky., 258 S.W.2d 709 (1953)...

With respect to the duty to defend, "[t]he insurance company must defend any suit in which the language of the complaint would bring it within the policy coverage regardless of the merit of the action." *Brown Foundation*, 814 S.W.2d at 279. The duty to defend is separate and distinct from the obligation to pay any claim, and the duty to defend is broader than the duty to indemnify. *Brown Foundation*, 814 S.W.2d at 279-80, *citing, Wolford v. Wolford*, 662 S.W.2d 835 (Ky. 1984). "The determination of whether a defense is required must be made at the outset of the litigation. *Knapp v. Chevron USA, Inc.*, 781 F.2d 1123 (5th Cir. 1986). The duty to defend continues to the point of establishing that liability upon which plaintiff was relying was in fact not covered by the policy and not merely that it might not be. 7C Appelman, *Insurance Law and Practice* § 4683.01 at 69 (Berdal Ed. 1979)." *Brown Foundation,* 814 S.W.2d at 279.

The Insurance Exclusion is very clear and very broad. The professional liability policy purchased by AIK excludes coverage for any claim which is based upon, arising out of, directly or

indirectly resulting from, in consequence of the offering of or administration of any insurance plan or program. AIK is alleged to have caused injury to the plaintiffs through its involvement in the appointment of officers of AIK Comp who mismanaged the fund, and through its failure to act to correct or to facilitate the correction of wrongful reserving practices about which it had knowledge. Further, AIK is accused of failing to reveal these problems of which it was aware, allegedly precipitating the financial collapse of the fund. There is no question that these claims against AIK arise, at least indirectly, as a result of or in consequence of the administration of an insurance program.

The Insurance Exclusion *does not* state that only claims against AIK arising from *AIK's* offering or administering the insurance plan or program are excluded. To so limit the exclusion, the phrase "the offering or administration" would require additional limiting language such as "the offering or administration *by the Insured*" or "the offering or administration *by you*." While AIK contends that the intention to limit the term in this way can be gleaned from the fact that AIK has a noninsurance business purpose, we simply cannot read this limitation into the clear and unequivocal language of the endorsement. The fact that USLIG quite broadly excluded coverage ends the inquiry. There can be no reasonable expectation on the part of AIK that this clear and unequivocal language be given such a restrictive interpretation.

Clearly. the amended complaint does not contain allegations that AIK itself offered or administered insurance. It does, however, allege that wrongful acts were committed by AIK resulting from its involvement in the administration of the fund. It is alleged to have submitted the names from which the appointment of AIK Comp officers was made and to have failed to investigate, remedy, or inform concerning the mismanagement of the fund. The claims against it cannot be divorced from their origin, which is the mismanagement of the fund. The claims against AIK concern alleged acts connected to the operation of the fund.

The Insurance Exclusion acknowledges the noninsurance business purpose of AIK. As a bona fide trade association, AIK is precluded from providing or administering insurance. However, the endorsement excludes not only claims addressing the provision or administration of insurance, but any claim against AIK arising out of the offering or administration of insurance. Thus the policy makes clear that there is no coverage for the alleged acts by AIK which clearly meet the indirect connection nexus set out in the exclusion.

AIK contends that since it does not offer or administer insurance, no actual or truthful claim against it could be based upon, arising out of, directly or indirectly resulting from, or in consequence of, the offering or administration of insurance. (Brief at p. 13). The issue is not the truth or falsity of the claims against AIK. Indeed, USLIG would have a duty to defend AIK against false claims *if* there was the possibility of coverage. AIK has been accused of acts directly or indirectly relating to or in consequence of the offering and administration of the fund. If true, coverage is excluded by the endorsement due to the nexus with the fund. If false, there can be no liability. In any event, there is no duty to defend as no claims have been made against AIK which are business liability claims *not relating to* the offering of membership in or the administration of the fund.

As the language of the Insurance Exclusion clearly and unambiguously excludes coverage for the claims made against AIK, the doctrine of reasonable expectations is unavailing to AIK to enlarge its rights under the policy. *Brown Foundation*, 814 S.W.2d at 280. The terms of the exclusion, under their plain and ordinary meaning, encompass the allegations of the Consolidated Amended Class Action Complaint and therefore absolve USLIG from any obligation to provide a defense in the matter.

For the reasons set forth herein and the court being otherwise sufficiently advised, **IT IS HEREBY ORDERED AND ADJUDGED** that the motion of the plaintiff, Associated Industries of Kentucky, Incorporated, to alter or amend (DN 42) is **GRANTED**, and the memorandum opinion and order of September 22, 2006 is **ALTERED AS SET FORTH IN THIS OPINION.** The

memorandum opinion is altered as set forth herein; the order of partial summary judgment in favor of the defendant, United States Liability Insurance Group, is reaffirmed.

**IT IS SO ORDERED.**